2012-31-30. We'll hear from Mr. Brown. Thank you, Your Honor. Please record. I represent Mr. Scheffler, who is here on appeal on an MFPB decision, terminating him from employment with government service after 30 years combined military and government experience. He was discharged on the basis of an alleged false claim to the Silver Star and its relationship to his job. You say alleged, but he never did earn a Silver Star, did he? Are you saying that he may have or that he did? I'm saying that the allegations were that, yes, I think we have to presume, as I was about to say, that the evidence does show that he did not receive the Silver Star. I think we have to assume that. His testimony at trial was that he had received a Silver Star in the mail sometime after his termination from the service, that is, when he left the service after 13 years and assumed the job with government service at that time. About two years later, he received a Silver Star for activities during the Desert Storm campaign. He was involved, without contradiction, he was involved in the Desert Storm campaign, and he did perform during the actual conduct of the movement forward out of Kuwait. That's not the issue, of course. It is not. Whether he served. Okay, but it does give us some factual context in which he made the claim. So, the allegation came up that he had not, in fact, received the Silver Star because a person that worked for him, a subordinate, made a complaint to the garrison commander, who then turned it over to the deputy garrison commander, who was the immediate supervisor. Counselor, isn't your argument that the conduct for which your client was terminated was falsely claiming that he had earned a Silver Star and that all that conduct occurred on non-business hours, let's say, or when he was not on duty? Globally, I think what we would say is that it's not job-related. Not job-related. That conduct does not relate directly to his job. That's the issue we're addressing today. I believe it is. Okay. And in that context, then, let me address that point. The testimony established that Mr. Scheffler had, in fact, at some point in time, brought certain items to work with him, which indicated that he had won the Silver Star, and he had a license plate, which indicated that he had won the Silver Star. There was no testimony that he got or obtained his position by virtue of having received the Silver Star. There was no testimony that he received any kind of promotion or award based on his service. Didn't he have a replica of the Silver Star sitting on top of his desk, his work desk? There is in the record a picture of a replica Silver Star, which is actually an award. And there's evidence that he would tell people that walked into his office, that's my Silver Star? If they asked, I suppose that's true. I think they would walk in and they would ask him about it, and he would say that that's my Silver Star. If he has this on his work desk, and he tells workers that come in that this is a picture of my Silver Star, how is that not work-related? It doesn't have anything to do with his job performance. I can give you an example. I mean, would we be here today if he had on his desk some award from serving in Africa with the Peace Corps? I doubt it. I seriously doubt it. But it relates to trust. Didn't the supervisor determine that he lost her trust because of these misrepresentations? The deputy commander said that – testified that she had lost all confidence in him because it turned out he had not received the Silver Star. But that is a different matter than what he was charged with. What he was charged with in the conduct under coming was that he had not received the Silver Star and then falsely, falsely alleged that he had. His testimony, which I submit was uncontroverted, was that he had received a Silver Star in – a Silver Star general order in the mail, which turned out apparently not to be a correct order. Is that conduct becoming an officer? I don't think it has anything to do with the conduct under coming of an officer. With all due respect, I think the allegation – I mean the statement, if true, and it was not disproven, would indicate that he received in the mail some sort of order for whatever reason. Somebody playing a prank, somebody doing something that they shouldn't have been doing. Some order that was sent in a large organization such as the United States Army. It's not inconceivable that somebody printed up an order that was not correct. That's a matter of evidence at the board and credibility. That's not before us. It is not, but they have to point to some evidence that he falsified the order, because that is the charge. The charge was that he falsified the order, and there is no evidence that he falsified the order. In his order, in his testimony, the only evidence that we have, and it's not really evidence, it's counterfacts by the ALJ, that he didn't do certain things like amend his 214 to indicate after he had gotten out of service that he had won the Silver Star. Those are the kinds of things that they used to show or allegedly demonstrate that the order was in fact falsified by him. The testimony, again, by him was that when he thought he had received it, that he took certain steps such as buying the license plate. He didn't deny that, such as giving a pen that he wore on his lapel. All those things flowed from that particular matter, but it had nothing to do with his conduct. None of that testimony relates to his specific conduct in falsifying the order. He did falsify, and that he had not earned the Silver Star, but going back to Judge Lori's question, I mean, he reported directly to the Garrison Commander, and his supervisor said, I've lost complete confidence in him because of his lying about earning the Silver Star. And I would submit to you… That's why he was fired. I would submit to you that in order to sustain the charge, the government is required to do more than that. They're required to show some objective standard by which it actually relates to his job duties, and they did not do that. Mr. Brown, what about the fact that there is a reference, I believe, in the government, in the Supplemental Appendix 14, I guess it's the AJA Administrative Judge's decision, the government notes it at page 4 of its brief, that he was applying for an award, a civilian award, and in that setting enclosed a photo of himself wearing the Silver Star. I mean, that's certainly – if one starts from the proposition, which I think we have to, that he did not in fact receive the Silver Star, here he is applying for an award in the context of his government employment, showing he's wearing the Silver Star. Why doesn't that relate to the workplace and government employment? Okay, well, first, John, that had nothing to do with his job duties. Absolutely nothing. Secondly, I go again to the testimony… What was that? What was that award? There's a reference on Supplemental Appendix 14, it's the AJA's decision. What was that all about? As I understand it, the Stalwart Award was a garrison award that was awarded to the employee who based on their job performance, their job performance, not their background, not any kind of award that they had received, but their actual job performance had done, in a little bit of another word, a Stalwart performance, something that merited the award, the Stalwart Award. So you're basically saying that even assuming that he misrepresented, in a sense, the fact that he had the Silver Star when he was up for this award, it isn't relevant because the fact of the Silver Star or not had no bearing on his job performance. It also had no bearing on the award, the award itself. Which was for job performance. So the charge of falsification, as it's been held by the Merit System Protection Board, requires that there be some gain, some benefit from the falsification. There has to be some false representation and then there has to be something that inures to the benefit of the employee. Let's assume that there was the required nexus established here. I guess you would next argue that the penalty was unreasonable, correct? Yes, after 30 years of combined service. If the Stalwart Award doesn't prove anything else, it proves that he was doing an excellent job. But the uncontroverted testimony, as cited in both the ALJ's opinion and in the Merit System Protection Board, indicates that he was doing an excellent job, that he had a fine work record without blemish, without any kind of problem at all and good job performance in the presence. So here's a man after 30 years who is discharged on the basis that he has falsified something, which we of course contend that he did not, but one matter after 30 years of employment. That seems more than justified. What about in the context of the investigation? I think there was a finding that when he was being investigated on this matter, he presented a false certification. Yes, and again, we would point to the fact that he was charged for that matter under the Stolen Valor Act and then required by his immediate supervisor to submit the general order that he had received in the mail. And he did that, he complied with the order. But the order he submitted was one that was available, it's a general order available on the web. Well, then they could have gotten it off the web. They asked him to submit the one that he had and he did. He did exactly what they told him to do. Let me, what he submitted was identical to what was on the web. It was not identical. It was a different order. It was substantially different. It had his name in a place where another person's appears on the general order that is in the records branch. Mr. Brown, you're into your rebuttal time. Do you want to save it or use it? I'd rather save it. Thank you. Ms. Hossford. May it please the Court. This Court should affirm Mr. Scheffler's removal. Substantial evidence supports the Board's finding that Mr. Scheffler lied to his coworkers, forged a document, and in fact lied to an investigator. Mr. Scheffler's counsel has indicated that somehow the lying, the forging of the document and lying to the investigator is irrelevant because he had already been charged with a violation of the False Valor Act. Do you think we'd have a different case here? And I realize you're arguing on the facts of the case that were found by the Board, which is certainly appropriate. But assume for the moment we had a situation where he's confronted about this. All that has happened is that the award is on his desk and there's this picture. And he's confronted with it and he said, yes, I shouldn't have done this, and that was the end of it. Do you think under those circumstances the penalty of removal would have been appropriate? Possibly not. Obviously, I can't answer for the agency, but this clearly is a case where not only – If he had phoned up at the time that he didn't have this honor, it probably would have been a different case. I don't know what the penalty would have been. But here he compounded the problem by submitting what was clearly a forged document to his supervisor and then lying to an investigator. And as I was saying before, Mr. Scheffler's counsel implies that somehow he'd already been charged with a violation of the Stolen Valor Act before he submitted the forged document. But first of all, he was never charged with a violation of the Stolen Valor Act. He was charged with lack of candor and the notice of proposed removal made clear that he was not being charged with a crime. Second, what actually happened was that one of his co-workers who had been hearing him talk about the Silver Star for years and years saw the pin on his lace on his lapel, saw the plaque on his wall. He actually would talk about the circumstances surrounding his award of the Silver Star, complained to his supervisor, said, I don't think Mr. Scheffler is telling the truth about the Silver Star. So the supervisor simply went to Mr. Scheffler and said, people are asking, or at least one of your subordinates is asking, whether you actually got the Silver Star. And at that point, Mr. Scheffler offered to provide written verification that he had the Silver Star. And then submitted that forged document to one of his superiors, which was then passed on to him. So what you're getting here is the fact that it's a Silver Star in a military setting, assumed for the moment the misrepresentation related to the claim that he had a Ph.D. in chemical engineering, say, or electrical engineering. And in fact, he didn't say that was the misrepresentation. Would it be a different case then, or is it the fact that we have this Silver Star in a military setting? I think the Silver Star in the military setting had something to do with it. But I think that the nexus that the board ultimately found had to do with the loss of trust and confidence. Mr. Scheffler was a GS-14 director of – You're saying that would be even if the representation was with respect to a false Ph.D. Well, no, not necessarily. If he had – just to clarify, if the false Ph.D. was a qualification he had used to get the job, that would be one thing. But if it wasn't relevant to his job at all and he claimed to have a false Ph.D., it probably – it might have prompted the same question from his supervisor. And if he had then provided a forged diploma with a Ph.D. and then lied to an investigator, I think the outcome could have been the same. I mean, the Supreme Court in the LaChance v. Erickson case held that regardless of the – even if the underlying conduct would have a penalty like a reprimand or a one-day suspension, if you lie during the investigation of the underlying conduct and you falsify documents or you otherwise lie, then that's an adequate basis for removal. And that – the fact that you were lying in the course of the investigation on a lesser charge doesn't mean that a serious penalty for that lying is appropriate. And he was working for the Army here. That's true. And the Silver Star is directly relevant to Army activity. That's correct, Your Honor. I mean, at the hearing there was quite a bit of testimony from both the superiors and subordinates saying that Silver Star is awarded for exceptional heroism. People died obtaining Silver Star, and that was repugnant to them. However, ultimately the board viewed the loss of trust and confidence. And he had a very high position, I think one of Your Honors noted earlier. He was sometimes viewed as second in command to the garrison commander when the civilian deputy wasn't there. She had ultimate trust in his integrity and his honesty, and that was completely shattered when he discovered that he lied and that he forged a document and lied to him. How does the Army award Silver Stars? Just help me with that background. Does it mail them out, or is there – I always thought there was a ceremony and Bugle's plan. I'm not aware if there's a ceremony, but there is a whole process. There has to be – I mean, obviously you have to establish that the heroism took place. There has to be a recommendation. Can you get one and not know that you were being considered? It seems highly unlikely. I mean, Mr. Sheffler must have known when he was being awarded the Bronze Star. He did get the Bronze Star. That's why the administrative judge ultimately – the board found his story completely incredible. How could someone seriously believe that someday they would just receive the Silver Star in the mail? And then claim later that they had no idea what the circumstances were or why they got it. And also the evidence showed he's never even served in combat. You have to serve in combat to receive the Silver Star. So he got a star. He did get a Bronze Star. From combat? No, non-combat. He worked in an administrative – he did go to, I believe, Afghanistan and Iraq. He worked in a supply-type setting, and he did receive the Bronze Star for that, but he never did actual combat. So the Bronze Star is not awarded for combat? I don't know if the Bronze Star is awarded for combat, but the Silver Star has to be based on combat. I think there was something in the record that said a Bronze Star might not be, but if it has a V for valor attached to it, that means it was for combat, but it's a little bit lesser than the Silver Star. I think you're correct, Your Honor. You're correct about that. Mr. Sheffler did not have to be, so there was no question that it was not awarded in combat. Just to briefly touch on the question about the Alvarez case and the fact that the Stolen Valor Act is ultimately held unconstitutional, I mean, even a perfunctory reading of the Alvarez case shows the Supreme Court's problem with it was that it applied any time, any place, to any person with basically no limits. And here, the context in which the lie was evaluated is in the, obviously, federal employment, and the Conoxy Minors case said that First Amendment rights aren't necessarily applicable for private comments on the job if the agency can, in fact, show a nexus between the comment and the efficiency of the service. And here, like I said, it was shown that their trust and confidence in him was shattered. I would also just briefly, before I sit down, touch on the penalty issue. The record is clear. If you look at JA-29 or SA-29, Colonel Graves testified at length that she carefully considered all of those factors and she did consider lesser penalties. So it wasn't like lesser penalties were not considered at all here. They were considered and were deemed the most appropriate. Unless court has other questions, I will ask that you affirm the fourth position. Thank you, Ms. Hossford. Mr. Brown has three-plus minutes for rebuttal. Thank you. The first thing I'd like to do is clear up a statement made by counsel that is incorrect. On SA-16, it's very clear that the appellant was requested, in fact, ordered, to submit the order that he had, the information that he had to clear up the matter with the Garrison Police Department who had undertaken an investigation for a violation of the Stolen Valor Act. So the Stolen Valor Act did play into that part of the matter that resulted in the termination of my client. And it is an important matter because it's a bootstrap. If they have no evidence that he has made a false claim of having won the Silver Star, the only way that they could job relate it was to request an investigation be done into the violation of the Stolen Valor Act. Mr. Brown, is it your position that if, at a military installation, a question is raised as to whether someone is properly holding themselves out as having received a particular military award, in this case a Silver Star, and a question comes up about it, that the agency can't investigate that? I mean, is it wrong in your view, leaving aside any reference to the Stolen Valor Act, just assume for the moment that an employee is saying, I won the Silver Star, and somebody says, no, I think there are circumstances which suggest the employee didn't win the Silver Star. Is it your position that it's improper for the agency to investigate it? I think in this case, the direct answer to your question is no, that would not be improper. But in this particular case, they chose not to because it really wasn't part of their mission. It didn't have anything to do with how he was doing the job. And so they did not do it. They turned it over as a Stolen Valor Act problem to the Garrison Police. You're saying they could have investigated, but they went about it the wrong way. They went about it in a way that said, this is a crime. This is something that's wrong, and we're going to prove that it's wrong, or we're going to forget about it. You're saying his superiors should have simply come to him and maybe gotten somebody to look into this and make a determination as to whether his representations were correct without getting the base police involved. Right. And then they'd have to prove. Then they'd have to show that it related directly to his employment, which I think they were very concerned about because they can't. It doesn't have anything to do directly with his employment. It is one thing to say that you've lost trust and confidence. As the court pointed out, Judge Shaw, in your question, there was some concern by this particular commander, Colonel Ray, that she had lost trust and confidence in him. That's what she said. But he had the Balance Act, four years of excellent job appraisals and performance by her in his job. And in that context, I think it loses the appeal that it might have otherwise. And I don't think she sought to investigate it because of that. And with respect to your question, Judge Ray, there are declarations routinely given to the men. This happens routinely to people who have left the service where the medal has been awarded on a late basis, which occurs in combat theaters, especially ones that end as quickly as the First Gulf War did. That's not an unusual event. Thank you, Mr. Brown. The case is submitted.